IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| HUSKY FINANCE HOLDINGS, LLC,<br><br>       Plaintiff,<br>v.<br><br>ZEUS, LLC,<br>MAVERICK ENERGY GROUP, LTD.,<br><br>       Defendants. | CIVIL ACTION NO. 4:12-CV-1344 |

**ORIGINAL COMPLAINT**

Plaintiff Husky Finance Holdings, LLC files this Original Complaint against Defendants Zeus, LLC and Maverick Energy Group, Ltd. as set forth below:

### I.  PARTIES

1. Husky Finance Holdings, LLC ("Husky") is a limited liability company organized under the laws of the State of Delaware, with its principal place of business in the United States located in Dallas, Texas.

2. Zeus, LLC ("Zeus") is a limited liability company organized under the laws of the State of Florida, with its principal place of business located in Jensen Beach, Florida.

3. Maverick Energy Group, Ltd. ("Maverick") is a corporation organized under the laws of the State of Nevada, with its principal place of business located in Tulsa, Oklahoma.

### II.  JURISDICTION AND VENUE

4. This Court has jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because Plaintiff Husky and Defendants Zeus and Maverick (collectively "Defendants"), are citizens of different states and the amount in controversy exceeds $75,000, excluding interest and costs. Paragraphs 1 through 3 are herein incorporated by reference.  Plaintiff Husky is a citizen of

1

Delaware and Texas.  All members of Husky are citizens of Delaware, and the citizenship of its ownership and membership extends, ultimately, to Bermuda.  Defendant Zeus is a citizen of Florida.  All members of Zeus are citizens of Florida or Nevada.  Defendant Maverick is a citizen of Nevada and Oklahoma.  Defendants are neither incorporated in Texas or Delaware, nor do Defendants have a principal place of business located in Texas or Delaware, nor are any members of Defendant Zeus citizens of Texas or Delaware.  As such, there is complete diversity between Plaintiff Husky and the Defendants.

5. Defendants Zeus and Maverick are subject to personal jurisdiction by virtue of valid and enforceable forum selection clauses consenting to jurisdiction and venue in the United States District Court for the Southern District of Texas.  Exhibit A to this Complaint is the "Pledge Agreement" of August 27, 2008, made by Zeus and Maverick in favor of CIT Capital USA, Inc. ("CIT").[1]  Exhibit B to this Complaint is the "Second Lien Pledge Agreement" of August 27, 2008, made by Zeus and Maverick in favor of CIT.  Husky is the successor in interest of CIT, having assumed all the rights and powers as Collateral Agent under the Pledge Agreements, and having been assigned all rights to fees, costs and expenses payable under the Pledge Agreements.  Under section 8.09(b) of the Pledge Agreement (Exhibit A) and section 8.09(b) of the Second Lien Pledge Agreement (Exhibit B), Defendants consent to jurisdiction and venue in the United States District Court for the Southern District of Texas as follows:

> Any legal action or proceeding with respect to this agreement or any other loan document may only be brought in the courts of the State of Texas or of the United States of America for the Southern District of Texas, and, by execution and delivery of this agreement, each of the parties hereby accepts for itself and (to the extent permitted by law) in respect of its property, generally and unconditionally, the exclusive jurisdiction of the aforesaid courts.  Each party hereby irrevocably waives any objection, including, without limitation, any objection to the laying of venue or based on the grounds of forum non conveniens, which it may now or

---

[1] As discussed further below, Plaintiff Husky succeeded CIT as agent under the operative agreements in March of 2012.

> hereafter have to the bringing of any such action or proceeding in such respective jurisdictions.

Pledge Agreement (Exhibit A), Section 8.09(b);

> Any legal action or proceeding with respect to this agreement or any other loan document may only be brought in the courts of the State of Texas or of the United States of America for the Southern District of Texas, and, by execution and delivery of this agreement, each of the parties hereby accepts for itself and (to the extent permitted by law) in respect of its property, generally and unconditionally, the exclusive jurisdiction of the aforesaid courts. Each party hereby irrevocably waives any objection, including, without limitation, any objection to the laying of venue or based on the grounds of forum non conveniens, which it may now or hereafter have to the bringing of any such action or proceeding in such respective jurisdictions.

Second Lien Pledge Agreement (Exhibit B), Section 8.09(b).

6. Venue is proper in this district under the forum selection clauses described in paragraph 5, incorporated herein by reference.

### III.   FACTS

7. On August 27, 2008, Defendants Zeus and Maverick, entered into the Pledge Agreement (Exhibit A) in favor of CIT as agent for various lenders under a "Credit Agreement" dated August 27, 2008 (attached as Exhibit C). The Credit Agreement was entered into by CIT, as administrative agent; various lenders; and the borrower, Z2, LLC, doing business in Texas as Z2 Oil & Gas, LLC ("Z2"). Under Recital B of the Pledge Agreement (Exhibit A), the entry of the Defendants into the Pledge Agreement was a condition precedent to the obligation of the lenders to make their respective loans to Z2 under the Credit Agreement.

8. In reliance on the Pledge Agreement, the lenders made their respective loans to Z2 under the Credit Agreement.

9. Under section 7.01 of the Pledge Agreement, Defendants Zeus and Maverick entered into a subordination agreement that would subordinate their claims to the agent and/or lenders' claims in the event of a default by Z2 :

3

> Section 7.01  <u>Subordination of All Pledgor Claims</u>.  As used herein, the term "<u>Pledgor Claims</u>" shall mean all debts and obligations of the Borrower or any other Pledgor to any other Pledgor, whether such debts and obligations now exist or are hereafter incurred or arise, or whether the obligation of the debtor thereon be direct, contingent, primary, secondary, several, joint and several, or otherwise, and irrespective of whether such debts or obligations be evidenced by note, contract, open account, or otherwise, and irrespective of the Person or Persons in whose favor such debts or obligations may, at their inception, have been, or may hereafter be created, or the manner in which they have been or may hereafter be acquired by.  After and during the continuation of an Event of Default, no Pledgor shall receive or collect, directly or indirectly, from any Pledgor in respect thereof any amount upon the Pledgor Claims.  "Pledgor Claims" shall not include any amounts owed by Borrower to a Pledgor for wages, employment benefits, or claims arising out of or related to Pledgor's employment by Borrower.

Pledge Agreement (Exhibit A), Section 7.01.

10. Under section 6.05(a) of the Pledge Agreement, Defendants Zeus and Maverick agreed to reimburse all expenses incurred in connection with the enforcement of rights under the Pledge Agreement and any other Loan Documents:

> Section 6.05  <u>Payment of Expenses, INDEMNITIES, Etc.</u>
> (a)  Each Pledgor agrees to pay or reimburse the Agent and each other Creditor for all out-of-pocket expenses incurred by such Person, including the fees, charges and disbursements of any counsel for such Person, in connection with the enforcement or protection of its rights in connection with this Agreement or any other Loan Document, including, without limitation, all costs and expenses incurred in connection with . . . (ii) the exercise or enforcement of any rights or remedies granted hereunder or under any of the other document or agreement executed or delivered in connection herewith or otherwise available to it (whether at law, in equity or otherwise) or (iii) the failure by the Debtor to perform or observe any of the provisions hereof or otherwise enforcing or preserving any rights under this Agreement and the other Loan Documents.

Pledge Agreement (Exhibit A), Section 6.05(a).  As defined in the Credit Agreement of August 27, 2008 (Exhibit C), the term "Loan Documents" refers to the Credit Agreement, the related notes, the fee letter, the letters of credit, the intercreditor agreement, and the security instruments.

11. On August 27, 2008, Defendants Zeus and Maverick entered into the Second Lien Pledge Agreement (Exhibit B) in favor of CIT as agent for various lenders under a "Second Lien Term Loan Agreement" dated August 27, 2008 (attached as Exhibit D).  The Term Loan

4

Agreement was entered into by CIT, as administrative agent; various lenders; and the borrower, Z2, LLC, doing business in Texas as Z2 Oil & Gas, LLC ("Z2").  Under Recital B of the Second Lien Pledge Agreement (Exhibit B), the entry of the Defendants into the Second Lien Pledge Agreement was a condition precedent to the obligation of the lenders to make their respective loans to Z2 under the Term Loan Agreement.

12. In reliance on the Second Lien Pledge Agreement, the lenders made their respective loans to Z2 under the Term Loan Agreement.

13. Under section 7.01 of the Second Lien Pledge Agreement, Defendants Zeus and Maverick entered into a subordination agreement which, again, subordinated any claims they would have against Z2 in the event of default to those of the agent and/or lenders:

> Section 7.01  <u>Subordination of All Pledgor Claims</u>.  As used herein, the term "<u>Pledgor Claims</u>" shall mean all debts and obligations of the Borrower or any other Pledgor to any other Pledgor, whether such debts and obligations now exist or are hereafter incurred or arise, or whether the obligation of the debtor thereon be direct, contingent, primary, secondary, several, joint and several, or otherwise, and irrespective of whether such debts or obligations be evidenced by note, contract, open account, or otherwise, and irrespective of the Person or Persons in whose favor such debts or obligations may, at their inception, have been, or may hereafter be created, or the manner in which they have been or may hereafter be acquired by.  After and during the continuation of an Event of Default, no Pledgor shall receive or collect, directly or indirectly, from any Pledgor in respect thereof any amount upon the Pledgor Claims.  "Pledgor Claims" shall not include any amounts owed by Borrower to a Pledgor for wages, employment benefits, or claims arising out of or related to Pledgor's employment by Borrower.

Second Lien Pledge Agreement (Exhibit B), Section 7.01.

14. Under section 6.05(a) of the Second Lien Pledge Agreement, Defendants Zeus and Maverick likewise agreed to reimburse all expenses incurred in connection with the enforcement of rights under the Second Lien Pledge Agreement and any other Loan Documents:

> Section 6.05  <u>Payment of Expenses, INDEMNITIES, Etc.</u>
> (a)  Each Pledgor agrees to pay or reimburse the Agent and each other Creditor for all out-of-pocket expenses incurred by such Person, including the fees, charges and disbursements of any counsel for such Person, in connection with the

5

> enforcement or protection of its rights in connection with this Agreement or any other Loan Document, including, without limitation, all costs and expenses incurred in connection with . . . (ii) the exercise or enforcement of any rights or remedies granted hereunder or under any of the other document or agreement executed or delivered in connection herewith or otherwise available to it (whether at law, in equity or otherwise) or (iii) the failure by the Debtor to perform or observe any of the provisions hereof or otherwise enforcing or preserving any rights under this Agreement and the other Loan Documents.

Second Lien Pledge Agreement (Exhibit B), Section 6.05(a). As defined in the Second Lien Term Loan Agreement (Exhibit D) of August 27, 2008, the term "Loan Documents" refers to the Second Lien Term Loan Agreement, the related notes, the fee letter, the intercreditor agreement, and the security instruments.

15. On August 27, 2008, borrower Z2 executed a "Deed of Trust" (Exhibit E) as grantor and mortgagor on oil and gas property located in Frio County, Texas and in Atascosa County, Texas (hereinafter, "Deed of Trust Property"), naming CIT as the beneficiary and mortgagee. On the same day, Z2 executed a "Second Lien Deed of Trust" (Exhibit F) as grantor and mortgagor on the Deed of Trust Property, again naming CIT as the beneficiary and mortgagee. As successor agent, Husky assumed CIT's role as beneficiary and mortgagee in both deeds of trust.

16. Z2 appointed Maverick as operator of the Deed of Trust Property, and Maverick continues in that role. As operator of the Deed of Trust Property, Maverick is obliged to conduct its activities as a reasonable and prudent operator, in a good and workmanlike manner, in accordance with good oilfield practice and in compliance with applicable law.

17. Under the Deed of Trust and the Second Lien Deed of Trust, Husky may request Maverick to resign as operator after default by Z2.

> Section 7.15  <u>Resignation of Operator</u>.  In addition to all rights and remedies under this Deed of Trust, at law and in equity, if any Event of Default shall occur and the Trustee or the Beneficiary shall exercise any remedies under this Deed of Trust with respect to any portion of the Deed of Trust Property (or the Grantor

shall transfer any Deed of Trust Property "in lieu of" foreclosure), the Beneficiary or the Trustee shall have the right to request that any operator of any Deed of Trust Property which is either the Grantor or any Affiliate of the Grantor resign as operator under the joint operating agreement applicable thereto, and no later than 60 days after receipt by the Grantor of any such request, the Grantor shall resign (or cause such other party to resign) as operator of such Deed of Trust Property.

Section 7.15, Deed of Trust (Exhibit E).

Section 7.15 <u>Resignation of Operator</u>. In addition to all rights and remedies under this Deed of Trust, at law and in equity, if any Event of Default shall occur and the Trustee or the Beneficiary shall exercise any remedies under this Deed of Trust with respect to any portion of the Deed of Trust Property (or the Grantor shall transfer any Deed of Trust Property "in lieu of" foreclosure), the Beneficiary or the Trustee shall have the right to request that any operator of any Deed of Trust Property which is either the Grantor or any Affiliate of the Grantor resign as operator under the joint operating agreement applicable thereto, and no later than 60 days after receipt by the Grantor of any such request, the Grantor shall resign (or cause such other party to resign) as operator of such Deed of Trust Property.

Section 7.15, Second Lien Deed of Trust (Exhibit F).

18. Z2 initially defaulted on its obligations on or about Summer 2009. On or about September 10, 2010, CIT notified Z2 of certain events of default under both the Credit Agreement and the Term Loan Agreement, and accordingly declared the unpaid principal and accrued and unpaid interest of the Notes and Loans, together with all accrued and unpaid fees payable to the agent, immediately due and payable in full.

19. On January 3, 2011, Z2 filed a petition in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division, for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq*.

20. From the time of default to the time of Z2's petition for bankruptcy protection, Defendants Zeus and Maverick continued to accept payments from Z2 for an unknown amount of their Pledgor Claims in violation of section 7.01 of the Pledge Agreement and section 7.01 of the Second Lien Pledge Agreement. For example, Maverick received over $5,227,495 during calendar year 2010. Exhibit G, Statement of Financial Affairs, *In re Z-2, LLC*, Case No. 11-

7

50069-lmc, Dkt. No. 30, at 81-102. Those payments amounted to at least 91.4% of Z2's total income for the calendar year ending December 31, 2010. Exhibit G, Statement of Financial Affairs, at 82. Further, over the duration of the bankruptcy proceeding (i.e., January 2011 to November 2011), Z2's bankruptcy counsel reported payments to Maverick of $4,013,300.00. Exhibit H, Cash Collateral Budget Reporting for Week Ending 10/28/2011, *In re Z-2, LLC*, Case No. 11-50069-lmc, Dkt. No. 159. The reported 2011 payments amounted to 93.4% of Z2's total net collections reported over the same period. *Id.*

21. Upon information and belief, Defendants accepted payments from Z2 on their Pledgor Claims in violation of section 7.01 of the Pledge Agreement and section 7.01 of the Second Lien Pledge Agreement.

22. On November 14, 2011, the United States Bankruptcy Court for the Western District of Texas, San Antonio Division, dismissed Z2's bankruptcy action. During the pendency of the bankruptcy proceeding, Husky's predecessor agent, CIT, incurred and paid substantial expenses and fees in enforcing and protecting the rights under the Pledge Agreements.

23. Since the bankruptcy proceeding, Maverick has continued to accept payments on its Pledgor Claims. For example, since December 31, 2011, Z2 has collected slightly under $1,026,000, and paid to Maverick in excess of $862,000.

24. The persons operating Maverick and Zeus are insiders to Z2. Maverick holds an 11.55% equity stake in Z2. Zeus holds a 52.517% equity stake in Z2. On information and belief, Zeus is controlled by Marc H. Baldinger, who also serves as Operating Manager of Z2. Also on information and belief, Maverick and Z2 share senior management. Richard Bednar serves as President of Maverick and CFO of Z2 and Brice Bogle serves as CFO of Maverick and Managing Director of Z2. As an insider, Maverick continues to operate the Deed of Trust

8

Property since default without any payments to the lenders, including Husky. All proceeds of the operation have been directed to insiders, including Maverick, in violation of section 7.01 of the Pledge Agreement and section 7.01 of the Second Lien Pledge Agreement.

25. As collateral agent, Husky has attempted to execute its remedies under the Deed of Trust and the Second Lien Deed of Trust. Husky directed the trustee for the Deed of Trust Property to post and foreclose the Deed of Trust and Second Lien Deed of Trust. The Deed of Trust Property was originally scheduled for a power of sale foreclosure on May 1, 2012. On April 27, 2012, another lender, Macquarie Bank Limited sought and obtained a temporary restraining order from the 116th District Court for Dallas County, Texas. As such, the power of sale foreclosure is currently stayed.

26. Husky has also noticed Z2 and the purchasers of its oil and gas production that, pursuant to section 3.01 of the Deed of Trust and section 3.01 of the Second Lien Deed of Trust, Z2's license to receive production has been rescinded.

27. On April 13, 2012, Husky demanded that Maverick provide immediate access to all books and records pertaining to the operation of the Deed of Trust Property, pursuant to Husky's right of entry as granted in section 7.02(b) of the Deed of Trust and section 7.02(b) of the Second Lien Deed of Trust. Access to Operations Demand Letter, Exhibit I. Section 7.02(b) provides as follows:

> (b) <u>Right of Entry</u>. The Beneficiary may, prior or subsequent to the institution of any foreclosure proceedings, enter upon the Deed of Trust Property, or any part thereof, and take exclusive possession of all or any part of the Deed of Trust Property and of all books, records, and accounts relating thereto, and may exclude the Grantor wholly or partly therefrom; and holding the same may, without interference from the Grantor or any other Person, possess, use, lease, administer, manage, preserve, protect, operate and control the Deed of Trust Property . . . .

Section 7.02(b), Deed of Trust (Exhibit E). The Second Lien Deed of Trust provides similarly:

> (b) <u>Right of Entry</u>. The Beneficiary may, prior or subsequent to the institution of

9

> any foreclosure proceedings, enter upon the Deed of Trust Property, or any part thereof, and take exclusive possession of all or any part of the Deed of Trust Property and of all books, records, and accounts relating thereto, and may exclude the Grantor wholly or partly therefrom; and holding the same may, without interference from the Grantor or any other Person, possess, use, lease, administer, manage, preserve, protect, operate and control the Deed of Trust Property . . . .

Section 7.02(b), Second Lien Deed of Trust (Exhibit F). Maverick has failed to grant immediate access to the books and records.

28. On April 13, 2012, Husky demanded that Maverick provide a properly prepared and executed Railroad Commission of Texas Form P-4 changing the designation of the operator to White Oak Operating Company, LLC ("White Oak"). Access to Operations Demand Letter, Exhibit I. Maverick has failed to provide such form that would change designation of the operator to White Oak.

29. Upon information and belief, Maverick has asserted a lien against the Deed of Trust Property on the basis that Maverick itself has failed to pay vendors more than $533,000 for materials and services provided to the Deed of Trust Property.

30. Maverick's lien fails to state that it has paid the vendors for these materials and services, nor does it detail the materials and services provided by the vendors to the Deed of Trust Property.

31. Maverick is an affiliate and insider of Z2. Maverick owns no interests in the Deed of Trust Property.

32. Despite its lien, Maverick has received from Z2 payments on its Pledgor Claims subsequent to Z2's default and, upon information and belief, Maverick continues to receive payments from Z2 on its Pledgor Claims.

33. Despite Maverick's continued payment by Z2 on its Pledgor Claims, Maverick's lien indicates its failure and inability to pay vendors for goods and services for operation, repair,

and maintenance of the Deed of Trust Property.  Because any payments to Maverick are subordinated to Husky's claims under the Pledge Agreement, on information and belief, the event of Z2's default has removed Maverick's ability to pay vendors.  Any such failure of Maverick to pay vendors risks the filing of liens on the Deed of Trust Property and/or the refusal to provide the needed materials and services to the Deed of Trust Property until paid in full.

34.     Section 5.01 of the Pledge Agreement (Exhibit A) provides Husky the right, upon Z2's default, to exercise all rights and remedies granted under the Pledge Agreement, the other Loan Documents, and available at law or equity.  Section 5.01 of the Second Lien Pledge Agreement (Exhibit B) likewise provides Husky the right, upon Z2's default, to exercise all rights and remedies granted under the Pledge Agreement, the other Loan Documents, and available at law or equity.

## IV.     BREACH OF CONTRACT

35.     Paragraphs 1 through 34 are herein incorporated by reference in this Count. Defendants' collections of payments from Z2 on Pledgor Claims after the event of Default are in violation of section 7.01 of the Pledge Agreement and section 7.01 of the Second Lien Pledge Agreement.

36.     All conditions precedent have been performed or have occurred as required by the Pledge Agreement and the Second Lien Pledge Agreement.  Plaintiff Husky, and its predecessor in interest, CIT, have performed their obligations under the Pledge Agreement and the Second Lien Pledge Agreement.

37.     Defendants' collections of payments from Z2 on Pledgor Claims after the event of Default are breaches of the parties' Pledge Agreement and Second Lien Pledge Agreement.

38.     As a direct and proximate result of Defendants' breach, Plaintiff Husky has suffered damages for the amounts paid improperly to Defendants on the Pledgor Claims.  While

Husky's predecessor CIT entered into an agreed order during the Chapter 11 proceeding allowing Maverick to receive payment from Z2 for essential expenses such as wages and materials, the bankruptcy proceeding has since been dismissed and neither Husky nor its predecessor CIT have consented to Defendants' collections on Pledgor Claims prior to or following bankruptcy.  Despite continued collection by insider Maverick from its affiliate Z2, no payments have been made to the lenders, including Husky, since Z2's default.

39. Despite creation of a lien on the Deed of Trust Property, Maverick continues to receive payments on its subordinated Pledgor Claims from Z2, in violation of the Pledgor Agreements.

40. Defendant Maverick's continued operations of Z2's property and its creation of liens against the Deed of Trust Property has damaged, and continues to damage Husky through the continued depreciation of the value of the Deed of Trust Property.

41. Upon information and belief, Defendant Maverick's inability to pay vendors for services and equipment for the Deed of Trust Property has further damaged, and risks to further damage, the value of the Deed of Trust Property.

42. Despite such wrongful actions as operator, and despite Husky's request for access to books and records for the operation of the Deed of Trust Property, Defendant Maverick has refused to provide immediate access to books and records to Husky as required by the Deeds of Trust and the Pledgor Agreements.

43. Despite Husky's request for execution of a form designating replacement of Defendant Maverick as operator, Maverick ignored such request.  Its continued wrongful actions as operator of the Deed of Trust Property continue to harm Husky's interests in the Deed of Trust Property.  Defendant Maverick's continued operation of the Deed of Trust Property violates Section 7.15 of the Deeds of Trust (Exhibits E and F) and Section 5.01(a) of the Pledge

Agreements (Exhibits A and B). Section 5.01(a) provides Husky the right, upon Z2's default, to exercise all rights and remedies granted under the Pledge Agreement, the other Loan Documents, and available at law or equity. Through section 5.01(a), Defendants have consented to Husky's independent and immediate rights to obtain possession of the Deed of Trust Property and to avoid any interference from other persons. Despite such consent, Defendant Maverick has ignored Husky's requests for access and control, and in doing so, have further injured Husky's interests.

44. Maverick's actions as operator of the Deed of Trust Property, and continued breaches of the Pledge Agreements and other agreements embodied and referenced therein have damaged and will continue to damage the value of the Deed of Trust Property and Husky's interests therein.

45. As a result of Defendants' obligations and Defendants' breach, Plaintiff Husky retained an attorney and seeks reimbursement for its reasonable attorneys' fees and costs, as authorized by section 6.05(a) of the Pledge Agreement and the Second Lien Pledge Agreement, and as authorized by Texas Civil Practice & Remedies Code Section 38.001.

## V. PRAYER FOR RELIEF

WHEREFORE, Husky prays for judgment and seeks relief against Defendants as follows:

(a) For a judgment that Defendants have breached the Pledge Agreement and the Second Lien Pledge Agreement;

(b) For a judgment and an award of all damages sustained by Husky as the result of Defendants' breach of the Pledge Agreement and the Second Lien Pledge Agreement;

(c) For a judgment that Defendant Maverick's operations of the Deed of Trust

Property have injured Husky's interests in the Deed of Trust Property, and an award of all damages sustained by Husky as the result of Defendants' breach and wrongful actions as operators of the Deed of Trust Property;

(d)  For a judgment directing removal of Defendant Maverick as operator of the Deed of Trust Property;

(e)  For a judgment directing Defendant Maverick to turn over its books and records for operation of the Deed of Trust Property to Plaintiff Husky;

(f)  For a judgment and an award of attorneys' fees pursuant to the Pledge Agreement and the Second Lien Pledge Agreement;

(g)  For a judgment and an award of attorneys' fees pursuant to Section 38.001 of the Texas Civil Practice & Remedies Code;

(h)  For a judgment and an award of all interest, pre-judgment and post-judgment, and costs; and

(i)  For a judgment and an award of such other and further relief as the Court may deem just and proper.

DATED: April 30, 2012

Respectfully Submitted,

By : /s/ John O'Neill

John O'Neill
joneill@winston.com
Texas Bar No. 15297500
S.D. Tex. Bar No. 2813
WINSTON & STRAWN LLP
1111 Louisiana, 25th Floor
Houston, Texas 77002-5242
Telephone: (713) 651-2600
Facsimile: (713) 651-2700

ATTORNEY-IN-CHARGE FOR PLAINTIFF
HUSKY FINANCE HOLDINGS, LLC

<u>Of Counsel</u>:

Walter M. Berger
cberger@winston.com
Texas Bar No. 00798063
S.D. Tex. Bar No. 21834
Richard T. McCarty
rmccarty@winston.com
Texas Bar No. 24074675
S.D. Tex. Bar No. 1147407

WINSTON & STRAWN LLP
1111 Louisiana, 25th Floor
Houston, Texas 77002-5242
Telephone: (713) 651-2600
Facsimile: (713) 651-2700

James Donnell
jdonnell@winston.com
Texas Bar No. 05981300
S.D. Tex. Bar No. 7792
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-6700
Facsimile: (212) 294-4700